UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FAYE B. FEINSTEIN, COURT-APPOINTED
RECEIVER FOR WEALTH MANAGEMENT
LLC, et al.,

        Plaintiffs,

v.                                                                         Case No. 10-C-00312

WOOD, HAT & SILVER, L.L.C., et al.,

        Defendants.

---

**DECISION AND ORDER**

---

In this action, Plaintiff Fay B. Feinstein, the court-appointed receiver for Wealth Management, LLC, and various Wealth Management Funds, seeks a declaratory judgment re-characterizing promissory notes held by five of the defendants as securities and therefore without priority over the interests of the Wealth Management investors represented by the Receiver. Alternatively, the Receiver seeks equitable subordination of the notes so that the payees are treated equally with the investors. Presently before the court are the motions of various defendants to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Two of the defendants also seek dismissal for lack of personal jurisdiction. Unless otherwise specified, all defendants will be referred to collectively hereinafter as "Defendants."

## I. BACKGROUND

This case arises out of a failed limited partnership fund that was formed to invest in life insurance policies on the elderly. The Brown Fund sought out elderly individuals willing to purchase life insurance policies with money the Fund loaned them and then assign the policies to the Fund. (Compl., Dkt. 1 ¶14.) The insureds ranged in age from 73 to 85 and the face value of the life insurance policies the Brown Fund held ranged from $1,000,000 to $15,000,000. (*Id.* ¶17.) Once the two year period of contestability for the life insurance policies lapsed, the Brown Fund would attempt to sell the policies either to the individual insureds or to other investors on a secondary market. In order to raise capital to pay the life insurance premiums the Brown Fund took on investors as limited partners. The limited partners agreed to share in the net profits or losses of the Brown Fund. (Dkt. 15-2 at 4.2.1.) Two Wealth Management funds (Watch Stone Partners L.P. and Palisade Partners L.P) became limited partners, and, by 2005, the WM Funds were the principal investor in the Brown Fund, investing $16.2 million, representing over 95% of the total investment. The general partner and manager of the Brown Fund was a Delaware limited liability company by the name of Wood Hat & Silver LLC ("WH&S"). The managing member of WH&S is Joseph Aaron. WH&S and Aaron are also named as defendants.

The Brown Fund apparently had difficulty re-selling these life insurance policies after a time, which was problematic given the fact that the Fund had to either pay the premium associated with insuring the life of the aged insured or simply let the policy lapse and lose its investment. Because annual life insurance policy premiums on the elderly are very expensive, the Brown Fund was faced with a cash flow problem and had to look elsewhere for financing.

Between 2007 and 2008 the Brown Fund borrowed approximately $1.7 million to cover the shortfalls in operating capital. In exchange the Brown Fund issued Promissory Notes to the five

2

lenders: the WH&S Hat & Silver 401(K) Profit Sharing Plan ("WH&S 401(k) Plan"), Joanne Miller Trust ("Miller"), Riek & Associates LLC ("Riek"), David Janssen M.D. ("Janssen"), and Fox Valley Plastic Surgery 401(K) Plan ("FVPS") (collectively the "Payee-Defendants"). The maturity dates of the Notes varied from three months to two years. The terms of the Notes provided for a fixed return on investment of 12% simple per year. (Though identified as exhibits to the Receiver's complaint, the notes were not attached to the complaint. However, copies of four of the notes appear as Exhibits B, C, D, and E to the Brown Fund's motion to dismiss. (Dkt. #15, Attach. 2-6.)).

The cash infusion from these loans did not help the Brown Fund right its sinking ship. As of January 31, 2010, the Brown Fund had assets totaling just over $1.5 million, well shy of the $1.7 million the Brown Fund borrowed from the Payee-Defendants, and less than ten percent of $16 million the WM Funds had invested. Thus, the problem at hand is that the Brown Fund does not have enough cash to pay back its creditors and investors. The Receiver's action is intended to defeat the priority claims of the Payee-Defendants so that the remaining assets of the Brown Fund are available for distribution to the investors. I addressed this issue, albeit in dicta, in a previous decision clarifying the extent of the freeze order entered in the related Receivership action, Case No. 09-C-506, Dkt. # 255. The issue is directly before me now. Before I address it, however, it is first necessary to determine whether the court has jurisdiction over it.

## II. SUBJECT MATTER JURISDICTION

Though the issue has not been raised by the defendants' motions, it is less than clear that the Court has subject-matter jurisdiction over this action. Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Neither the parties nor

their lawyers may waive arguments that the court lacks jurisdiction. *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir.2000). Thus, even if the parties do not address the issue of subject-matter jurisdiction, a federal court must insure that such jurisdiction exists before it undertakes to resolve a case. *Büchel-Ruegsegger v. Büchel*, 576 F.3d 451, 453 (7th Cir. 2009).

In this case, complete diversity in the citizenship of the parties is lacking, and the claims do not arise under federal law. The Receiver has alleged in her complaint, however, that the court has supplemental jurisdiction under 28 U.S.C. § 1367(a), because "this is a case related to the securities litigation pending before this Court (Case Number 1:09-cv-00506), and the Receiver is seeking to protect assets belonging to the receivership estate." (Compl. ¶ 10.) Section 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

But federal courts only have supplemental jurisdiction over claims that arise in cases in which there exists an independent basis for federal jurisdiction. *See 13D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure* § 3567, at 314 (3d ed. 2008) ("Accordingly, supplemental jurisdiction does not– and cannot– operate to get a *case* into federal court. Rather, it becomes relevant only after a case has invoked an independent basis of federal subject matter jurisdiction.") (italics original). Here, the Receiver's invocation of supplemental jurisdiction is based on the relationship of this action to a separate action pending before this Court. Yet Section 1367 speaks of the relationship of separate claims in the same action. *See McClelland v. Longhitano*, 140 F. Supp. 2d 201, 203 (N.D.N.Y. 2003) ("[o]n its face, 28 U.S.C. § 1367 distinguishes between actions and claims"). It does not apply here.

Notwithstanding the lack of supplemental jurisdiction under Section 1367, a number of courts held prior to its enactment in 1990 that federal jurisdiction does exist over actions brought by a receiver in furtherance of its appointment where the federal district court had jurisdiction over the original action in which it appointed the receiver. The Supreme Court so held in *Riehle v. Margolies*, 279 U.S. 218, 223 (1929) ("The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit . . . or by ancillary proceedings."). The Sixth Circuit explained the underlying rationale for the rule more recently:

> [T]he initial suit which results in the appointment of the receiver is the primary action and . . . any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.

*Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir.1981).

Although these cases precede the enactment of Section 1367, the Fourth Circuit recently held that this form of ancillary jurisdiction was not eliminated by Section 1367. In *Robb Evans & Assoc. LLC v. Holibaugh*, the Court held that while § 1367 governs ancillary jurisdiction over claims asserted in a case over which the district court has federal subject matter jurisdiction, "it does not affect common law ancillary jurisdiction 'over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction,' which remains governed by case law." 609 F.3d 359, 363 (4th Cir. 2010) (quoting *13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure* § 3523.2 (3d ed. 2010) (emphasis in original)). Other courts, including the Seventh Circuit, have reached essentially the same

5

conclusion, though not necessarily by the same route. *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008); *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995). Based on this authority, I conclude that subject matter jurisdiction exists and proceed to address the motions to dismiss.

### III. MOTIONS TO DISMISS

#### A. Personal Jurisdiction

Two of the eight Defendants--Defendant Aaron and Defendant Wood Hat & Silver 401(k) Profit Sharing Plan–argue the complaint should be dismissed not only because it fails to state a claim but also because this Court does not have personal jurisdiction over them. The general rule is that when a court is confronted by a motion raising a combination of Rule 12(b) defenses, it should decide the jurisdictional issues before considering whether a claim is stated in the complaint. This issue must be addressed first. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (Friendly, J.) (" Not only does logic compel initial consideration of the issue of jurisdiction over the defendant- a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim- but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice.").

To determine whether there is personal jurisdiction this Court must decide whether a defendant is subject to personal jurisdiction under Wisconsin's long arm statute and, if so, whether exercising jurisdiction under the statute is consistent with the due process requirements of the Fourteenth Amendment. *Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir.1990); *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986)*; Heritage House*

*Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir. 1990). Wisconsin's long arm statute is to be construed liberally in favor of finding jurisdiction. *See Marsh v. Farm Bureau Mutual Insurance Co.*, 505 N.W.2d 162, 165 (Wis. Ct. App. 1993). The burden rests on the plaintiff to establish that the court has personal jurisdiction over each defendant. *See Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996).

Here the Receiver Plaintiff relies on § 801.05(1)(d) of Wisconsin's long arm statues which states that a court has personal jurisdiction "[i]n any action whether arising within or without this state, against a defendant who when the action is commenced ... is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." In general a defendant has "substantial and not isolated" activities within Wisconsin when the defendant has "solicit[ed], creat[ed], nurture[d] or maintain[ed], whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." *Dorf v. Ron March Co.,* 99 F. Supp. 2d 994 (E.D. Wis. 2000) *quoting Stauffacher v. Bennett*, 969 F.2d 455, 457 (7th Cir. 1992). Specifically, in determining whether contacts with Wisconsin are "substantial," so as to allow for personal jurisdiction under the long-arm statute, courts consider the (1) quantity of contacts, (2) nature and quality of contacts, (3) source of contacts and their connection with cause of action, (4) interests of State of Wisconsin, and (5) convenience of the parties. *PKWare, Inc. v. Meade,* 79 F. Supp. 2d 1007, 1012 (E.D. Wis. 2000).

Defendant Aaron must be considered separately from Defendant WH&S 401(k) Plan. Aaron was the managing member of WH&S, which, in turn was the General Partner of the Brown Fund. The complaint alleges that Aaron solicited the investments made by Wisconsin-based WM Funds, and the contributions made by the Wisconsin based Note-holders. (Compl., Dkt. 1, ¶¶ 21-24.) Indeed, according to the complaint, Aaron was the managing partner of WH&S, a limited

liability company that managed the Fund. Aaron signed each of the promissory notes on behalf of the Brown Fund that are the subject of this action. Four of the five promissory notes were given in exchange for loans from Wisconsin residents. And as already noted, the WM funds created and managed by Wealth Management, a Wisconsin limited liability company, invested more than $16 million with the Brown Fund. These facts clearly establish the Aaron was "engaged in substantial and not isolated activities within this state." Wis. Stat. § 801.05(1)(d); *see Druschel v. Cloeren*, 2006 WI App 190, ¶ 10, 295 Wis. 2d 858, 723 N.W.2d 430 (holding that out-of-state debtor who signed promissory note for the purchase of Wisconsin company engaged in substantial activities in Wisconsin so as to provide personal jurisdiction over debtor under the long-arm statute in note holder's breach of contract action, where he made six to eight personal visits and frequent telephone conversations with Wisconsin residents).

Citing this Court's decision in *Versatile Plastics, Inc. v. Sknowbest! Inc.,* 247 F. Supp. 2d 1098, 1100 (E.D. Wis. 2003), Aaron argues that his activities directed toward Wisconsin residents should not be considered because he was acting on behalf of WH&S which was the managing member of the Brown Fund. But *Versatile Plastics* has little in common with the facts of this case. There the Court held that two out of state CEOs could not be hauled into court in Wisconsin on the basis of two cease and desist letters sent by their attorney to Wisconsin infringers of their companies' patent rights. *Id.* at 1100. Here, by contrast, Aaron (not his attorney) is alleged to have solicited millions of dollars from Wisconsin investors and lenders over a period of several years. The actions alleged in the complaint, which are not contested by Aaron, are more than sufficient to establish that he "purposely avail[ed] [him]self of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

8

Regarding the WH&S 401(k) Plan, Plaintiff fails to make an allegation of any connection whatsoever with the State of Wisconsin or its citizens. All Plaintiff pleads is that the Brown Fund, a Delaware limited partnership, provided a Promissory Note to the WH&S 401(k) Plan, a California-based retirement plan. (Compl. at ¶¶ 2 and 4, Dkt. 1.) There must be an independent basis for personal jurisdiction over each defendant. *See PKWare, Inc. v. Meade,* 79 F. Supp. 2d 1007, 1012 (E.D. Wis. 2000). Personal jurisdiction over WH&S does not automatically equate to jurisdiction over the WH&S 401(k) Plan. Absent even an allegation of a qualifying relationship between WH&S 401(k) Plan and the State of Wisconsin, this Court lacks personal jurisdiction over Defendant WH&S 401(k) Plan. Accordingly, this Defendant WH&S 401(k) Plan will be dismissed from the case for lack of personal jurisdiction.

### B. Re-characterization Claim

The moving defendants also seek dismissal on the ground that the complaint fails to state a claim. The standards for evaluating such a motion are well established. Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In deciding whether it is sufficient to state a claim, the court must "accept[ ] the complaint's well-pleaded allegations as true and draw[ ] all favorable inferences for the plaintiff." *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. 2007). The allegations must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must

be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). In addition, "where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006); *see also Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls").

The Receiver alleges that the Promissory Notes held by the Payee-Defendants are illegally issued securities, not credit instruments, and requests a declaratory judgment to that effect. The Receiver maintains that such a declaration will render the Payee-Defendants simple investors with rights identical to those of the limited partners in the Brown Fund. Alternatively, the Receiver argues there is an equitable basis for awarding priority in distribution of funds to the limited partners, and requests a judgment subordinating the rights of the Payee-Defendants to those of the Brown Fund's limited partners.

In order to properly analyze Defendants' motion to dismiss Plaintiff's first count seeking re-characterization, this Court considers the relationships between the Brown Fund, the WM Funds and the Payee-Defendants. In so doing this Court looks closely at the express terms of the Limited Partnership Agreement, the Promissory Notes, and the allegations contained in the complaint.

### 1. WM Funds' Interest in the Brown Fund

The parties do not dispute the fact that the WM Funds have limited partnership interests in the Brown Fund. Section 7.1.2 of the Limited Partnership Agreement ("LPA") specifically allows the General Partner of the Brown Fund to borrow monies to finance life insurance policies. (Dkt. 15-2.) This means the WM Funds, as limited partners of the Brown Fund, agreed to allow the Brown Fund to borrow monies. This contractual term, agreed to between the Brown Fund and the WM Funds is unambiguous and will not be re-written by this Court. As limited partners in the

Brown Fund, the WM Funds hold a legal interest in the Brown Fund itself but do not have any property interest in the partnership's assets. *See Smith v. Bader*, 458 F. Supp. 1184, 1187 (S.D.N.Y. 1978) (observing that under California law ". . . the limited partner has no property interest in the assets of the partnership, but only a right to share in the profits.") (citation omitted); see also *City of Wilmington v. Bassett Partners*, L.P., No. 99C-09-140 WCC, 2000 WL 1211513, at *3 (Del. Super. Ct. June 30, 2000) ("Regardless of the type of property (real, personal or mixed) that a limited partnership owns, the general partners and limited partners of the partnership have no interest in specific partnership property.") (citation omitted). The Receiver stands in the shoes of the WM Funds in their role as limited partners of the Brown Fund but she has no greater rights than they did. The Receiver, therefore, is bound by the contract–the LPA–that the WM Funds entered into with the Brown Fund.

The LPA also defined contractually the priority of distribution of fund assets in the event of liquidation. In relevant part, the LPA stated that:

> The proceeds from the liquidation of the Fund's property will be applied and distributed … first to the payment and discharge of all of the Fund's debts and liabilities (other than to those to the partners), including the establishment of any necessary reserves… [s]econd, to the payment of any debts and liabilities to the Partners… [t]he balance, if any, to each Partner having a positive balance in his or her Capital Account…

(Dkt. 15-2 at § 13.2.1-3.)

### 2. Payee-Defendants' Interests in the Brown Fund

Unlike the WM Funds, the Payee-Defendants do not have limited partnership interests in the Brown Fund. Instead they hold Promissory Notes from the Brown Fund. The plain text of the Promissory Notes the Brown Fund issued to Payee-Defendants belies Receiver's argument that the Notes are securities. (*See* Dkt. 15 Ex. B-E.) Under the terms of the Promissory Notes the Payee-

11

Defendants were entitled to return of their principal and interest at the agreed upon 12%. (*Id.*) The maturity dates of these Notes was short – ranging from three months to two years. The Payee-Defendants were not entitled to share in profits of the Brown Fund itself, and did not assume any liability for losses incurred by the Brown Fund. (*Id.*) These are the clear indicia of a loan, not a security. *See Am. Fletcher Mort. Co., Inc. v. U.S. Steel Credit Corp.,* 635 F.2d 1247 (7th Cir. 1980) (holding that the term "security" is not applicable to commercial loans, where such loans bore interest at a certain rate, were made for a certain purpose, matured in a relatively short period of time, and did not include the right to participate in the profits of the underlying project). The Receiver offers no reason or authority for this Court to disregard the terms of the Promissory Notes the Payee-Defendants received in exchange for the money they loaned to the Brown Fund.

Re-characterization is improper because as a matter of law, the Defendants hold Promissory Notes, not securities. The Plaintiff's claim for a declaratory judgment must be dismissed because Plaintiff's allegations are insufficient to raise a right to relief above the speculative level.

### C. Dismissal of Declaratory Judgment–Equitable Subordination Claim

Under the theory of equitable subordination "courts may reorder distributions from the bankruptcy estate, in whole or in part, for the sake of treating legitimate claimants to the estate equitably." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24 (2000). Equitable subordination typically involves closely-held corporations and their insiders. *See Kham & Nate's Shoes No 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1356 (7th Cir. 1990). Equitable subordination is rarely applied outside of bankruptcy proceedings, but there is authority to suggest it is available as an equitable remedy in actions brought by the Securities and Exchange Commission to enforce the securities laws. *SEC v. American Bd. Of Trade,* 719 F. Supp. 186, 195-96 (S.D.N.Y. 1989). There is nothing before this Court to suggest that the Defendants, who extended credit to the Brown Fund,

have engaged in misconduct. The Receiver does not allege that the Defendant Payees are corporate insiders with equity interests who attempted to leapfrog other shareholders or members in an effort to gain the status of a secured creditor.

The Receiver points out that accusations of misconduct should be assessed on a case by case basis. In order to proceed to such case by case evaluation, however, the complaint must at least contain an allegation of wrongdoing. If there is no allegation of inequitable conduct, bankruptcy courts generally cannot subordinate a claim. *See Matter of Lifschultz Fast Freight,* 132 F.3d 339, 344-45 (7th Cir. 1997) (reviewing provision 11 U.S.C. § 510(c)(1) of the Bankruptcy Code and holding that a bankruptcy court must first search for inequitable conduct, and if none is found the bankruptcy court cannot equitably subordinate a claim). Here Plaintiff's complaint simply fails to allege any wrongdoing. Absent such an allegation that equitable principles were violated, the complaint fails to raise the Plaintiff's claims beyond a speculative level.

In sum, Plaintiff's complaint fails to provide more than labels and conclusions to support its request for a declaratory judgment of re-characterization and equitable subordination. Labels and conclusions of law do not control, however, when the plain language of the instruments at issue is in conflict. The complaint fails to allege any grounds, either legal or equitable, for disregarding the form of the Promissory Notes the Payee-Defendants received in return for their loans. Accordingly, the Receiver's claims for declaratory relief will be dismissed.

**IV. CONCLUSION**

For the reasons set forth above, the motions to dismiss are **GRANTED**. Defendant WH&S 401(k) Plan is **DISMISSED** for lack of personal jurisdiction. As to the remaining defendants, the complaint fails to state a claim upon which relief can be granted. All claims are **DISMISSED**, and

the clerk is directed to enter judgment dismissing the complaint in favor of the defendants and against the plaintiff.

    **SO ORDERED** this   9th   day of September, 2010.

                                  s/ William C. Griesbach
                                  William C. Griesbach
                                  United States District Judge